Tracy A. Miller, AZ 015920
J. Alexander Dattilo, AZ 030112
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.,
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ  85016
Telephone:  602-778-3700
Fax:  602-778-3750
tracy.miller@ogletree.com
alexander.dattilo@ogletree.com
*Attorneys for E Mortgage Capital, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kasapi, an Arizona Resident; Jarrett Bain, an Arizona Resident; and Samantha Pearce, an Arizona Resident Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>E Mortgage Capital, Inc. a California limited liability company,<br><br>Defendant. | No.  2:25-cv-02907-DWL<br><br>**DEFENDANT'S RESPONSE AND OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION** |

Plaintiffs cannot meet their burden to establish that the Proposed Collective is similarly situated, and Plaintiffs' Motion should be denied. Plaintiffs do not (and cannot) plausibly allege the existence of a common decision, policy, or plan underlying any of the theories they have alleged to support their sole claim for unpaid overtime. Likewise, Plaintiffs fail to make other allegations demonstrating a factual or legal nexus among members of the Proposed Collective that is material to their claims for unpaid overtime.

The Proposed Collective is overbroad and consists of at least six different positions that (1) perform different job duties, (2) differ in status as exempt versus non-exempt, (3) are compensated in materially different ways, (4) are subject to varied pay and timekeeping policies, and (5) report to different supervisors who apply said policies. Plaintiffs have not and cannot allege facts establishing that they were subject to any uniform policy or practice that violated the FLSA and deprived them of any overtime pay they were owed. Moreover,

1  these above-referenced differences in members of the Proposed Collective that relate to
2  their claims make collective treatment infeasible. In short, Plaintiffs have failed to establish
3  facts sufficient to warrant collective and adjudication.

4  Plaintiffs' own allegations in the Complaint and supporting declarations establish
5  that they seek certification of a collective that contains exempt *and* non-exempt employees,
6  which eviscerates the credibility of their hollow, conclusory claim that the Proposed
7  Collective is "similarly situated." The factual and legal issues underlying an unpaid
8  overtime claim that is brought by an exempt employee versus a non-exempt employee are
9  radically different; members of the Proposed Collective who were classified as exempt
10 (such as Pearce and Bain) must advance a misclassification theory that requires analysis of
11 their individual job functions, compensation structure, and even whether they acted in a
12 supervisory or managerial role – conversely, claims of non-exempt members (*e.g.*, Kasapi)
13 will hinge on whether they (1) worked off-the-clock and/or (2) were compensated for all
14 hours worked in excess of forty in a single week at the proper rate. In other words, mini-
15 trials will be required for exempt employees on highly-individualized issues that must be
16 decided to adjudicate their claims, whereas the claims of non-exempt employees will turn
17 on facts regarding the hours they worked, what their payroll records reflect, and factual
18 allegations and legal theories regarding Defendant's knowledge and/or permission of any
19 overtime hours the employees allegedly worked. Collective treatment is impossible here.

20 **I.  FACTUAL BACKGROUND**

21 Plaintiffs Ron Kasapi, Samantha Pearce, and Jarret Bain filed their Complaint on
22 August 13, 2025. Dkt. 1. On August 26, 2025, they moved for conditional certification of
23 a collective consisting of "[a]ll employees who work[ed] for Defendant E Mortgage
24 Capital, Inc. and/or a related entity; within the last three years; who work[ed] over 40 hours
25 in any given workweek as a past or present dialer, pre-approval manager, director, loan
26 processor, loan officer assistant, Loan Consultant, Loan Production Assistant, Branch Pre-
27 Approval Manager, CRM manager, loan officer, inside sales representative, loan officer
28 (or similar job title and/or similar job duties and responsibilities)…" ("Proposed

2

1  Collective"). Dkt. 6 at p. 1.

2  E Mortgage Capital, Inc. ("EMC") is a full-service residential mortgage lender headquartered in Santa Ana, California. Declaration of Alfred Ward ("War. Decl.") at ¶ 5. EMC maintains 44 branches in states across the country. *Id.* at ¶ 5. Defendant's workforce is comprised of both exempt and non-exempt employees, and Defendant EMC maintains lawful policies applicable to both classifications. *Id.* at ¶¶ 9-10. Exempt employees do not record hours worked and are not entitled to overtime compensation. *Id.* at ¶9. Defendant maintains lawful policies and practices with respect to the payment of recording hours worked and the payment of overtime wages to non-exempt employees. *Id* at ¶¶ 9-10. EMC's policies expressly prohibit any off-the-clock work, as a written policy states in part:

> All non-exempt employees are required to record all the time worked for payroll purposes. All time worked must be accurately reported on your time record. Employees will be required to certify that their time record is accurate on a weekly basis. Employees must record their own time at the start and at the end of each work period…Any errors on your timecard should be reported immediately to your supervisor or Human Resources. Employees are not allowed to work "off the clock." Working off the clock violates Company policy…An employee who is asked to work "off the clock" should refuse and report it immediately to his or her supervisor or Human Resources. Supervisors who condone, permit, or require "off the clock" work violate Company policy, and will be subject to discipline, up to and including termination of employment.

*Id.* at ¶ 9.

Plaintiffs were employed at one of Defendant's branches in Phoenix, Arizona. War. Decl. at ¶¶ 11, 13,15. Defendant employed Kasapi as a Loan Consultant from April 1, 2024 until January 1, 2025. Compl. at ¶ 41; Kas. Decl. at ¶ 3. In this role, he was classified as non-exempt and paid an hourly rate, plus bonuses. War. Decl. at ¶¶ 11-12. During this period, he earned overtime pay and reported to Matthew Adams. *Id.* at ¶ 11. Conversely, Defendant employed Pearce as a CRM Manager from April 1, 2024 until June 30, 2025. Compl. at ¶ 43; Pea. Decl. at ¶ 3. Pearce was classified as exempt. *See* Pea. Decl. ¶ 7. She also earned an annual salary plus bonuses, and she reported to Timothy Potempa (SVP) throughout her employment. War. Decl. at ¶¶ 15-16. *Id.* Defendant also employed Bain as a Loan Coordinator Lead from April 1, 2025 until July 1, 2025. Compl. ¶ 41; Kas. Decl. at

¶ 3. He was classified as exempt in this role and earned a salary, plus bonuses. War. Decl. at ¶¶ 13-14. He reported to Cory Ouellette (VP of Sales). *Id*. at ¶ 13.

Plaintiffs held three of the eleven positions identified in the Proposed Collective; Defendant does not employ any individuals as a "Past Dialer, Present Dialer, Director, Loan Production Assistant, or Branch Pre-Approval Manager." *Id*. at ¶ 17. The Loan Consultant, Loan Processor, and Loan Officer Assistant positions are all non-exempt positions and paid an hourly wage, plus commissions or bonuses. *Id*. at ¶ 19. The CRM Manager and Loan Coordinator Lead positions are both classified as exempt and paid a salary, plus earned bonuses. *Id*. at ¶¶ 13, 15. These positions are compensated for all overtime hours worked. *Id*.

Plaintiffs report to different supervisors. Loan Processors at the Potempa branch reported to Tina Vesecky (Processing Manager), while Loan Officers and Loan Officer Assistants reported initially to Cory Ouellete (VP Sales), and later to Andrew Lemon (VP Branch Production). *Id*. at ¶ 22. Different branches have different reporting structures – and to the extent these same positions exist in any other branches, the employees filling those roles report to a supervisor in their branch based on their respective job title. *Id*.

## II.     LEGAL STANDARD

The Ninth Circuit follows a "'two-step approach' under which (1) the plaintiff may, around the pleading stage, seek 'preliminary certification' and (2) the employer may, at or after the close of discovery, file a motion for 'decertification.'" *Guanzon v. Vixxo Corp*., CV-17-01157-PHX-DWL, 2019 WL 1586873, at *2 (D. Ariz. Apr. 12, 2019) (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018)). "[W]hile review is lenient for preliminary certification, [the plaintiff's] allegations must still be of a nature that shows the proposed collective to be similarly situated with regard to the alleged FLSA-violating behavior." *Emonds v. Amazon.com, Inc*., C19-1613JLR, 2020 WL 5993908, at *5 (W.D. Wash. Oct. 9, 2020); *Harris v. Nat'l Waterproofing & Roofing LLC*, No. CV-21-01537-PHX-SPL, 2022 WL 4094149, at *3 (D. Ariz. Sept. 7, 2022) (plaintiffs' burden at preliminary certification stage, "is typically light" but it is, "by no means automatic"). To

obtain preliminary certification, Plaintiffs must allege "substantial allegations that the proposed class members were together the victims of a single decision, policy, or plan" that violated the FLSA. *Martinez v. Money Source, Inc.*, No. 2:19-CV-00060-SVW-E, 2020 WL 5289851, at *2 (C.D. Cal. June 9, 2020); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 928 (D. Ariz. 2010).

### III.   ARGUMENT

**A.   Plaintiffs have failed to allege facts sufficient to establish that they are similarly situated to one another, let alone the Proposed Collective.**

Plaintiffs' Motion must be denied because they cannot show that the members of the Proposed Collective are similarly situated as required under 29 U.S.C. § 216(b), much less that they were subject to any policy that violated the FLSA. In determining whether conditional certification is warranted, "what matters is not just *any* similarity between party plaintiffs," as they must demonstrate "a legal or factual similarity material to the resolution of [their] claims." *Campbell*, 903 F.3d at 1115 (emphasis in original). To meet their burden, Plaintiffs must plausibly allege either: (1) facts establishing that they were deprived of overtime wages pursuant to a common decision, policy, or plan; or (2) other allegations tying the alleged class-wide deprivation of overtime pay to a common material question of fact or law. *Emonds*, 2020 WL 5993908 at *5. Plaintiffs have failed to establish either one, and thus cannot satisfy the standard for conditional certification.

**1.   Plaintiffs fail to allege the existence of any common policy, practice, or plan that that violated the FLSA to deprive them of overtime pay.**

Plaintiffs have failed to show that all members of the Proposed Collective were subject to any policy that violated the FLSA.

Plaintiffs pursue their claim for unpaid overtime based on three theories. They contend that Defendant: (1) misclassified them as exempt, and thereby deprived them of overtime wages (Compl. at ¶ 8); (2) failed to compensate them at the correct overtime rate for hours worked in excess of forty in each week (Compl. at ¶¶ 52-53); and (3) prohibited them from reporting all hours worked (Compl. at ¶¶ 48, 65). As explained below, the allegations in their Complaint and declarations filed in support of the Motion do not

5

plausibly allege any policy, decision, plan, or practice applicable to the Proposed Collective under any of these theories.

Courts look to the "specific, non-conclusory allegations in the [Complaint]" and the "non-hearsay portions" of any supporting declaration to determine whether plaintiffs establish that they are similarly situated. *See*, *e.g.*, *Vanorden v. ECP Optometry Servs. LLC*, No. CV-24-01060-PHX-DWL, 2024 WL 5200483, at *8 (D. Ariz. Dec. 23, 2024) (Lanza, J.). To fulfill "the similarly situated requirement," a "plaintiff must provide the court with *detailed* allegations supported by [declarations]…" *Kesley v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1070 (D. Ariz. 2014) (emphasis added) (citing *Colson*, 687 F. Supp. 2d at 928). "A standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic." *Rode v. Creative Env'ts Design & Landscape Inc.*, No. CV-21-01656-PHX-ESW, 2022 WL 1567918, at *3 (D. Ariz. Jan. 25, 2022) (denying conditional certification; plaintiff lacked sufficient support for claim that he was similarly situated to other employees) (citation omitted). Here, even if assumed true, Plaintiffs' conclusory allegations at best articulate only "ad-hoc noncompliance" with facially lawful policies of their employer; they "do not provide a non-speculative basis for the Court to infer a collective-wide FLSA violation." *Martinez*, 2020 WL 5289851 at *3.

### i. *Plaintiffs do not allege the existence of any class-wide policy or practice that prevented or discouraged reporting overtime.*

In support of their off-the-clock theory, Plaintiffs allege that they "were not permitted to report all of their overtime hours" and that "Defendant's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices." Compl. at ¶¶ 48, 70; Kai Decl. at ¶ 7, Bai Decl. at ¶ 7, Pea Decl. at ¶10. These allegations do not plausibly allege that Plaintiffs' and the members of the Proposed Collective were deprived of overtime pursuant any common policy or practice.

Plaintiffs cannot (and do not) allege the existence of an official or written company policy which required them to work without compensation or otherwise resulted in them

6

being deprived of overtime.[1] Similarly, Plaintiffs do not allege any facts indicating that for the Proposed Collective, there was effectively a policy *to disregard* Defendant's policy prohibiting off-the-clock work. *White v. Baptist Mem. Health Care Corp.*, 2011 WL 1883959, *9-10 (W.D. Tenn. May 17, 2011) ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy..."). Stated differently, Plaintiffs must show "a policy-to-violate-the-policy..." *Id*.

Specifically, Plaintiffs do not allege how they were prevented from reporting any overtime hours in contravention of Defendants' explicit written policy that expressly prohibits off-the-clock work." *Martinez*, 2020 WL 5289851 at *3. Plaintiffs do not even allege the existence of such a policy or practice on a branch-wide basis, or even for individuals. *Id.* Plaintiffs do not allege that any supervisor instructed them (or any members of the Proposed Collective) to not report or underreport their overtime hours. *Id*. Plaintiffs also have not alleged the existence of "a widespread policy and practice that discouraged [them] from reporting overtime hours." *Greist v. LendUS, LLC*, No. 24-CV-02411-AMO, 2025 WL 1616541, at *2 (N.D. Cal. June 6, 2025) (plaintiffs established existence of a uniform FLSA-violating policy by alleging that, "irrespective of [Defendant's] written policy, employer's practice was to discourage [proposed collective members] from reporting overtime" and "instructed employees 'to clock in at the beginning and out at the end of their scheduled shift, in order to avoid any additional labor costs, regardless of the time they actually worked'"). Plaintiffs also do not allege that they were asked to perform any specific compensable tasks off-the-clock, without compensation. *See e.g.*, *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 949 (9th Cir. 2019) (plaintiffs alleged "common theory of defendants' statutory violation" where claims were premised on

---

[1] To the extent Plaintiffs allege the existence of any common unwritten policy that required them to work without compensation, the court can consider EMC's lawful written policies contradicting this. *See Martinez*, 2020 WL 5289851 at *1 ("Courts have noted that the presence of express policies prohibiting off-the-clock work, while by no means dispositive, tends to contradict the existence of a 'common policy' and therefore is a factor against FLSA certification").

allegations that defendants suffered or permitted plaintiffs to perform compensable work before and after scheduled practice and game times); *Millstein v. Cnty. of Los Angeles*, No. 221CV02623MEMFGJSX, 2023 WL 4315544, at *5 (C.D. Cal. July 3, 2023) (granting conditional certification where plaintiffs alleged employer maintained practice of requiring employees to perform certain off-the-clock duties outside of 40-hour workweek and work during their meal breaks, while not paying them for rest breaks).

Here, Plaintiffs do not "meaningfully allege" that Defendant's alleged failure to pay them overtime stemmed from any source applicable to each member of the Proposed Collective. *Emonds*, 2020 WL 5993908 at *5. Plaintiffs do not allege that they were prevented from reporting overtime as a result of any company-wide (or even branch-wide) policy, practice, system, or supervisor. Plaintiffs were not (and do not even allege to have been) supervised by the same individuals who applied these policies. War. Decl. at ¶¶ 11,13,16. At the Potempa Branch alone, nearly every position identified in the Proposed Collective reported to a different supervisor. *Id.* at ¶ 22. The Proposed Collective contains individuals who worked at branches across the country – and consequently, the many different supervisors they reported to applied Defendant's policies to them. *Id.* at ¶ 21.

### ii. *Plaintiffs fail to establish (or even allege) the existence of a common policy, practice, or plan of misclassification that applied to each member of the Proposed Collective.*

Similar to their off-the-clock theory, Plaintiffs summarily allege that they and each of the positions identified in the Proposed Collective were misclassified as exempt (*see* Compl. at ¶ 8), but do not allege the existence of a uniform policy of misclassification that applied to each member of the Proposed Collective. *Herrera* at *5. Plaintiffs cannot reasonably dispute that their claims (at the very least with respect to Pearce) and those of some Proposed Collective members are based on a misclassification theory.[2]

---

[2] The allegations in Plaintiffs' Complaint and declarations do not support their allegation each of the Proposed Collective were all misclassified as exempt, as they summarily allege in the Complaint. Compl. at ¶ 8. Pearce alleges that as "CRM Manager," she was "classified as exempt but was not an exempt employee." Pea. Dec. at ¶ 7. Conversely, neither Kasapi nor Bain allege that they or any of the other employees of the Proposed Collective were *misclassified* as exempt. *See* Kai. Decl.; *see* Pea Decl.

8

### iii. *Plaintiffs do not allege any policy (let alone a uniform one) under which Defendant miscalculated their overtime wages.*

The Complaint alleges that: "Plaintiffs and the Collective Members' commissions and bonuses were not factored into the calculation of their regular rate of pay." *Id.* at ¶¶ 6, 52-53. Plaintiffs' declarations lack allegations adequate to establish this theory of unpaid overtime – and fail to even allege that Plaintiffs received overtime (*i.e.*, compensation for hours worked in excess of forty in a single week). Rather, they allege that overtime was calculated at the wrong rate. Plaintiffs' allegations fail to establish that Plaintiffs were individually subject to an any policy that violated the FLSA and resulted in them receiving overtime at the incorrect rate. They also fail to plausibly allege that Defendant adopted any common decision, policy, or plan of doing so that applied on a collective-wide basis.

### 2. Plaintiffs fail to show any alleged class-wide deprivation of overtime pay to a common material question of fact or law.

Plaintiffs' do not plausibly allege any "legal or factual similarity material to the disposition of their claim for unpaid overtime" that warrant collective resolution. *Senne*, 934 F. 3d at 948 (citing *Campbell*, 903 F.3d at 117). Plaintiffs do not allege that they were deprived of overtime pursuant based on similar factual circumstances. For example, they do not allege that EMC failed to compensate them for performing specific tasks. *See*, *e.g.*, *Millstein*, 2023 WL 4315544, at *5. Additionally, Plaintiffs' do not "perform similar job duties" nor are they "subject to the same oversight and performance expectations" or "compensated in the same way." *Salgado v. Flowers Foods Inc.*, No. CV-22-00420-TUC-JGZ, 2025 WL 653483, at *4 (D. Ariz. Feb. 28, 2025).

Moreover, Plaintiffs have failed to allege facts or introduce other evidence from which it could be reasonably inferred that others were deprived of overtime pay they were actually owed. For example, in their respective declarations, each declarant references several co-workers, and alleges in part that they "*personally witnessed and spoke to*" these co-workers "*who worked a similar schedule.*" *See*, *e.g.*, Motion Ex. 2 at ¶¶ 9-16. Each declarant then further alleges that, with each co-worker: "*We discussed our pay structure, and he was also not paid overtime, just like me.*" *See id.* These claims that the co-worker "was also not paid overtime" are not even supported by factual allegations establishing that

9

1  the declarant knows the referenced co-worker (1) was a non-exempt employee *and* (2)
2  actually worked over 40 hours in a given week where they did not receive overtime pay.
3  *See id*. In fact, two of the co-workers repeatedly referenced in these declarations – Andrew
4  Klein and Matt Adams – were exempt employees, which further underscores how
5  infeasible the Proposed Collective is for collective treatment. War. Decl. at ¶ 23. The
6  declarations are wholly speculative in this regard, and cannot support conditional
7  certification. *See Longnecker v. Am. Exp. Co.*, No. 2:14-CV-0069-HRH, 2014 WL
8  4071662, at *2 (D. Ariz. Aug. 18, 2014) (denying certification for collective of employees
9  in other call centers; plaintiff's belief that other employees "would have been subject to the
   same policies as [her]" was "nothing more than speculation").

   **B.  Plaintiffs are attempting to certify a collective that includes exempt *and* non-exempt positions, which will necessitate "mini-trials" to determine whether certain exemptions apply to certain employees.**

Even if Plaintiffs had carried their burden to identify any a policy, practice, or plan that violated the FLSA *and* applied to the Proposed Collective, conditional certification would still be inappropriate because the Proposed Collective would consist of both exempt and non-exempt positions – which will invariably necessitate individualized assessments.

Misclassification claims turn on evidence and legal standards that do not apply to unpaid wage claims asserted by non-exempt employees – and consequently, conditional certification of a collective with both exempt and non-exempt employees is "not appropriate" because "there is no factual nexus between the collective action members' 'situations." *See Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *5 (N.D. Cal. July 31, 2017) (quoting *Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at *12 (S.D.N.Y. May 1, 2012); *see also Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1260 (S.D. Fla. 2016) ("[T]he mixing of both exempt and non-exempt employees in a class does not lend itself to proceeding by way of a conditional class because it is overbroad"). A misclassification claim is premised on the position that the employer misclassified the employee as exempt when his duties "consisted primarily of non-exempt tasks" – and it will thus "involve an analysis of daily duties and responsibilities

10

1 and the amount of time spent on each," whereas the claims of a non-exempt employee
2 conversely "will involve an examination of hours worked, payroll records and [the
3 defendant's] knowledge and/or permission of the alleged overtime hours worked." *Romero*
4 at *12. Here, claims for unpaid overtime by Pearce and other members of the Proposed
5 Collective who worked as CRM Managers or the Loan Coordinator Leads are thus
6 predicated on a misclassification theory – and this will involve factual and legal theories
7 distinct from members of the Proposed Collective who were classified as non-exempt.

8 Plaintiffs' claims (at least with respect to at least some members of the Proposed
9 Collective) are premised on their assertion that they were misclassified as exempt. Compl.
10 at ¶¶ 8, 24, 77; Pea. Decl. at ¶ 4. Where Plaintiffs allege misclassification as part of their
11 unpaid wage claim, courts in the Ninth Circuit require that they "provide some further
12 allegations or evidence indicating that prospective class members share similar job duties"
13 to establish that they are similarly situated. *Herrera v. EOS IT Mgmt. Sols., Inc.,* No. 20-
14 CV-01093-LHK, 2020 WL 7342709, at *4 (N.D. Cal. Dec. 14, 2020; *Trinh v. JP Morgan*
15 *Chase & Co.*, No. 07-cv-1666-WMC, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008).
16 Further allegations regarding an employees' job duties are essential in a collective
17 misclassification case, because "[t]he nature of an employee's job duties dictates whether
18 he falls under an exemption, and thus the similarities between employees' duties dictates
19 whether their claims should be tried together." *Rozeboom v. Dietz & Watson, Inc.*, No.
20 2:17-CV-01266-RAJ, 2018 WL 2266692, at *2 (W.D. Wash. May 17, 2018); *Herrera* at
21 *4. Plaintiffs fail to make the necessary factual allegations and instead rely on conclusory
22 allegations that the members of the Proposed Collective, "are similar, if not identical, to
23 Plaintiffs in terms of job duties." Compl. at ¶ 69. For example, both Pearce's and Kasapi's
24 declarations allege that Pearce "had the same job title and job duties and compensation" as
25 each of them – but Pearce alleges that she held a different job title than Bain, and Kasapi
26 and states that she performed job duties different from other named Plaintiffs. *See* Bai.
27 Decl. at ¶ 12; Kas Decl. at ¶ 12; Pea. Decl. at ¶ 7.

28 In addition to requiring Plaintiffs to allege the performance of similar job duties in

11

1 misclassification claims, "[s]ome courts have also emphasized whether plaintiffs can show
2 that they and the putative class members fell under similar compensation schemes."
3 *Herrera* at *4 (quoting *Wilson v. Maxim Healthcare Servs., Inc.*, 2014 WL 7340480, at *2
4 (W.D. Wash. Dec. 22, 2014). As outlined above, Bain, Pearce, and other members of the
5 Proposed Collective who held similar job titles (either CRM Manager or Loan Coordinator
6 Lead) were paid a salary and earned bonuses. War. Decl. at ¶¶ 13-16. Conversely, the Loan
7 Consultant position – and other positions in the Proposed Collective (including the Loan
8 Processor, Loan Officer, and Loan Officer Assistant roles) – were paid an hourly wage plus
9 commissions or bonuses. *Id*.

      **C.    The Court does not have personal jurisdiction over Defendant with respect to the claims of any out-of-state collective members.**

If the Court conditionally certifies a collective, it must be limited to plaintiffs who worked in Arizona. Federal courts may not exercise claims of out-of-state plaintiffs unless the acts giving rise to them arose in the forum state or the court has general jurisdiction over the defendant. *See Harrington v. Cracker Barrel Old Country Store, Inc*., 142 F.4th 678, 687 (9th Cir. 2025) (applying *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty*., 137 S.Ct. 1773, 1777 (2017) to FLSA collective actions)).

      **1.    Defendant is not, "at-home" in Arizona, so the Court therefore may not exercise general jurisdiction over Plaintiffs' or the Proposed Collective's Claims.**

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them [only] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). A corporation is "at home" (and subject to the personal jurisdiction) of the state in which it is incorporated and has its principal place of business. *Daimler* at 136. Here, Defendant EMC is a California corporation with its headquarters in Santa Ana, California. War. Decl. ¶ 4. EMC's only connection to Arizona is through its branch operations. *Id*. at ¶¶ 4-6. These contacts do not confer general jurisdiction over EMC under Supreme Court precedent. *Daimler* at 136. In the absence of general

jurisdiction, the claims of out-of-state plaintiffs in a collective could only be certified through specific jurisdiction.

### 2. The Court lacks specific jurisdiction over the claims of any out of Members of the Proposed Collective.

Specific jurisdiction, "focuses on the relationship among the defendant, the forum, and the litigation, *i.e.*, whether the suit "arises out of or relates to the defendant's contacts with the forum." *Harrington* at 685 (internal quotation marks and citations omitted). For a court to exercise specific jurisdiction, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Bristol Myers*, 137 S.Ct. at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Without such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. The claims of the out-of-state members of the Proposed Collective have no connection to Arizona (or EMC's operations here).

In the event the Court grants conditional certification of some defined class, the notice should be limited to potential class members who were employed in Arizona.

### D.     Plaintiffs' proposed notice and notice plan is flawed.

If the Court grants Plaintiffs' motion for conditional certification, it should direct the parties to meet and confer on a form of notice and claim form, rather than accept the proposed forms Plaintiffs submitted. *See*, *e.g*., *Khadera v. ABM Indus. Inc.*, 701 F. Supp. 2d 1190, 1197 (W.D. Wash. 2010) ("The Court encourages the parties to meet and confer to determine whether they can provide a stipulated notice form"); *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("The parties are directed to meet and confer within twenty (20) days of the issuance of this order and to draft a stipulated notice form").

First, the Notice fails to inform recipients that the Court has made no judgment on the merits until the final sentence at the top of page 2. Dkt. 6-4 at 2. Such placement threatens "judicial neutrality" and creates "the appearance of judicial endorsement." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989). The notice should "include

a neutral and non-technical reference to discovery obligations, to ensure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class action." *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *11 (E.D.N.Y. 2011). This also includes notifying the potential opt-ins that they may be required to pay litigation costs. *Hoffman v. Securitas Sec. Servs.*, No. CV07-502-S-EJL, 2008 WL 5054684, at *15 (D. Idaho Aug. 27, 2008); *Bah v. Shoe Mania, Inc.*, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (The notice should advise potential opt-ins that they could be asked to sit for a deposition, answer written discovery, testify at trial, and even cover litigation expenses).

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiffs' motion for conditional certification.

RESPECTFULLY SUBMITTED this 4th day of November 2025.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: s/ *Tracy A. Miller*_____
    Tracy A. Miller
    J. Alexander Dattilo
    Esplanade Center III, Suite 800
    2415 East Camelback Road
    Phoenix, AZ 85016
    *Attorneys for Defendant*
    *E Mortgage Capital, Inc.*