**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ron Kasapi, et al., | No. CV-25-02907-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| E Mortgage Capital Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiffs' motion for conditional certification ("the preliminary certification motion")[1] of a collective action under the Fair Labor Standards Act ("FLSA"). (Doc. 6.)  For the reasons that follow, the motion is granted.

## BACKGROUND

On August 13, 2025, Plaintiffs filed this FLSA collective action against Defendant E Mortgage Capital Incorporated ("Defendant"). (Doc. 1.)  The members of the proposed collective are "[a]ll employees who work[ed] for Defendant E Mortgage Capital, Inc. and/or a related entity; within the last three years; who worked over 40 hours in any given workweek as a past or present dialer, pre-approval manager, director, loan processor, loan officer assistant, Loan Consultant, Loan Production Assistant, Branch Pre-Approval Manager, CRM manager, loan officer, inside sales representative, loan officer (or similar job title and/or similar job duties and responsibilities)." (*Id.* ¶ 63.)  The complaint alleges

---

[1]    Courts in the Ninth Circuit use the terms "conditional certification" and "preliminary certification" interchangeably.

that the collective members "were misclassified as exempt" (*id.* ¶ 8); that "Defendant permitted, and in fact required, Plaintiffs to work overtime as a condition of their employment" (*id.* ¶ 56); that "Plaintiffs were not permitted to report all of their overtime hours and [were] not paid for all hours worked over 40 hours" (*id.* ¶ 48); that "Defendant would deduct any overtime compensation paid to Plaintiffs from their earned commissions" (*id.* ¶ 54); and that "[t]he experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the Collective Members" (*id.* ¶ 71).

On August 26, 2025, Plaintiffs filed the pending preliminary certification motion (Doc. 6), which, after several extension requests (Docs. 10, 11, 17, 18, 23, 25), is now fully briefed.  (Docs. 26, 27.)  Neither side requested oral argument.

## DISCUSSION

I.    <u>Legal Standard</u>

The FLSA provides "similarly situated" employees with the "right" to bring a collective action against their employer:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . .  The right . . . to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . . .

29 U.S.C. § 216(b).

The seminal Ninth Circuit case regarding FLSA collective actions is *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).  In *Campbell*, the Ninth Circuit explained that § 216(b) provides that "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing."  *Id.* at 1100.  The court further explained that this right "has two permutations": (1) "[t]he right . . . to bring an action by or on behalf of any employee"; and (2) "the right of any employee to become a party plaintiff to any such action"—"that is, the right to bring the collective litigation and the right to join it."  *Id.*

Turning to the procedures and standards governing FLSA collective actions, the *Campbell* court noted that a judicially-crafted "two-step 'certification' process" had become "near-universal" and therefore chose to "adhere" to the terms "preliminary certification" and "decertification" in the FLSA context because they are "widespread," with the caveat that adherence to this terminology does not "imply that there should be any particular procedural parallels between collective and class actions." *Id.* at 1100-02. The court further clarified that, under the two-step certification process, "plaintiffs will, at some point around the pleading stage, move for 'preliminary certification' of the collective action, contending that they have at least facially satisfied the 'similarly situated' requirement," and then "[l]ater, after the necessary discovery is complete, defendants will move for 'decertification' of the collective action on the theory that the plaintiffs' status as 'similarly situated' was not borne out by the fully developed record." *Id.* at 1100. Although the court acknowledged that both steps involve evaluating whether the plaintiffs are "similarly situated," it emphasized that the district court applies different standards at each step:

> Preliminary certification, as noted, refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the "similarly situated" requirement of section 216(b). At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence. The level of consideration is "lenient"—sometimes articulated as requiring "substantial allegations," sometimes as turning on a "reasonable basis," but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings.
>
> [ . . . ]
>
> Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery. The employer can move for "decertification" of the collective action for failure to satisfy the "similarly situated" requirement in light of the evidence produced to that point. The district court will then take a more exacting look at the plaintiffs' allegations and the record. Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the "similarly situated" question, and may be combined with cross-motions for summary judgment.

*Id.* at 1109-10 (cleaned up). The court noted that "the two-step process . . . has the

1    advantage of ensuring early notice of plausible collective actions, then eliminating those

2    whose promise is not borne out by the record." *Id.* at 1110.[2]

3        *Campbell* articulated the following definition of "similarly situated" that courts

4    within the Ninth Circuit must employ:

5        [P]arty plaintiffs must be alike with regard to some *material* aspect of their
         litigation.  That is, the FLSA requires similarity of the kind that allows
6        plaintiffs the advantage of lower individual costs to vindicate rights by the
         pooling of resources.  That goal is only achieved—and, therefore, a collective
7        can only be maintained—to the extent party plaintiffs are alike in ways that
         matter to the disposition of their FLSA claims.  If the party plaintiffs' factual
8        or legal similarities *are* material to the resolution of their case, dissimilarities
         in other respects should not defeat collective treatment.
9

10   *Id.* at 1114 (cleaned up).  Put another way, "[p]arty plaintiffs are similarly situated, and

11   may proceed in a collective, to the extent they share a similar issue of law or fact material

12   to the disposition of their FLSA claims."  *Id.* at 1117.  "[D]ifference" is not

13   "disqualifying"—rather, "the requisite kind of similarity" is the "basis for allowing

14   partially distinct cases to proceed together."  *Id.*

15       Under this definition, the members of an FLSA collective do not need to have

16   "overall sameness."  *Id.* at 1116.  For example, in *Campbell*, it was enough for the plaintiffs

17   to demonstrate that they were subject to the same "overall policy" regardless of whether

18   they "worked on different tasks, in different divisions, and under different supervisors"

19   because "[a] systemic policy is no less common across the collective if those subject to it

20   are affected at different times, at different places, in different ways, or to different degrees."

21   *Id.*  In that case, "[t]he district court emphasized also that the [plaintiffs] worked different

22   ─────────────────────
     [2]     In *Campbell*, a decertification motion was at issue, so the "more exacting"
23   summary-judgment-like standard applied, as opposed to the "lenient" plausibility-like
     standard that applies to a preliminary certification motion.  Nevertheless, *Campbell* sets
24   forth the standard for both steps in the two-step process and is binding as to both.  *See, e.g.,*
     *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("Where a panel confronts an
25   issue germane to the eventual resolution of the case, and resolves it after reasoned
     consideration in a published opinion, that ruling becomes the law of the circuit, regardless
26   of whether doing so is necessary in some strict logical sense."); *Vanorden v. ECP*
     *Optometry Servs. LLC*, 2024 WL 5200483, *6 (D. Ariz. 2024) ("To the extent Defendants
27   argue that *Campbell*'s articulation of the applicable preliminary-certification standard is
     dicta, not only is that characterization of *Campbell* incorrect for the reasons discussed
28   above, but the disputed passages of *Campbell* would remain binding here even if they could
     be characterized as dicta.").

hours and claimed overtime of different amounts, including some amounts that might have been de minimis," but the Ninth Circuit stated that "those distinctions go to the individualized calculation of damages or the individualized application of defenses" and "do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance." *Id.* Likewise, the need for "individualized damages calculations" does not preclude certification of the collective. *Id.* at 1116-17.

Finally, *Campbell* clarified that "the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." *Id.* at 1115. "As is true in all FLSA cases," the "background principle" is that "because the FLSA is a remedial statute, it must be interpreted broadly." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 950 (9th Cir. 2019) (citation omitted). "The 'similarly situated' standard at [the conditional certification] phase is fairly lenient and typically results in certification." *Roberts v. Sidwell Air Freight Inc.*, 2022 WL 16949565, *8 (W.D. Wash. 2022) (quotation omitted).

## II.    The Parties' Arguments

### A.    **The Motion**

Plaintiffs assert that the collective meets the standard for preliminary certification because "Defendant instituted a company-wide practice to deprive Plaintiffs and other similar employees of their full overtime wages by not providing an adjusted overtime rate to include bonuses and not paying for off-the-clock overtime pay for hours worked over 40 hours in a given workweek." (Doc. 6 at 10.) Plaintiffs also assert that their proposed notice (Doc. 6-4) is "accurate and informative" and "appropriate." (Doc. 6 at 10-11.) Plaintiffs ask the Court to approve their notification plan:

> Plaintiffs request that the Court authorize Notice in the form of: (1) mailing of the proposed Notice, by Plaintiffs' Counsel, to all known addresses of all potential opt-in Plaintiffs; and (2) emailing of the proposed Notice, by Plaintiffs' Counsel, to all known email addresses of all potential opt-in Plaintiffs, (3) posting of the proposed Notice, by Defendant, in a conspicuous location in all its facilities until the opt-in period closes; and (4) inclusion of notice with paychecks to Defendant's current workers.

Plaintiffs propose that the notice be sent to the putative class members twice: the first time within seven days of receiving the list of putative class members and a second time forty-five days after, but only to those class members who have not joined at that time.

[ . . . ]

Plaintiffs further request that the Court order a ninety (90) day notice period for employees to opt-in to the case. The Collective Members may execute their consent forms traditionally or electronically via DocuSign and/or Clio.

[ . . . ]

[Finally, Plaintiffs request that] the Court order Defendant to produce within three days of its order, a list in electronic and importable format, of all employees including: (1) their full name, (2) all known mailing addresses, (3) all known email addresses (work and personal), (4) employee identification number, if any, (5) dates of employment, and (6) phone numbers.

(*Id.* at 11-14.)

## B.    **The Response**

Defendant argues that the proposed collective is "overbroad and consists of at least six different positions that (1) perform different job duties, (2) differ in status as exempt versus non-exempt, (3) are compensated in materially different ways, (4) are subject to varied pay and timekeeping policies, and (5) report to different supervisors who apply said policies," that "these above-referenced differences . . . make collective treatment infeasible," and that "Plaintiffs have not and cannot allege facts establishing that they were subject to any uniform policy or practice that violated the FLSA and deprived them of any overtime pay they were owed." (Doc. 26 at 1-2.)  Defendant further asserts that "Plaintiffs cannot (and do not) allege the existence of an official or written company policy which required them to work without compensation or otherwise resulted in them being deprived of overtime" and "do not allege any facts indicating that for the Proposed Collective, there was effectively a policy to disregard Defendant's policy prohibiting off-the-clock work." (*Id.* at 6-7.)  Defendant argues that Plaintiffs have not alleged that the collective members "were deprived of overtime . . . based on similar factual circumstances" because, "[f]or example," Plaintiffs do not allege that Defendant "failed to compensate them for performing specific tasks." (*Id.* at 9.)  Defendant also appears to suggest that Plaintiffs'

proffered evidentiary support is inadequate: "Plaintiffs have failed to allege facts or introduce other evidence from which it could be reasonably inferred that others were deprived of overtime pay they were actually owed." (*Id.*)  And Defendant argues that preliminary certification is "inappropriate because the Proposed Collective would consist of both exempt and non-exempt positions," such that the collective members who were classified as exempt will have misclassification claims "that do not apply to unpaid wage claims asserted by non-exempt employees." (*Id.* at 10.)

Defendant next argues that if the collective is certified, it must be limited to plaintiffs who worked in Arizona. (*Id.* at 12.)  Finally, Defendant suggests that "[i]f the Court grants Plaintiffs' motion for conditional certification, it should direct the parties to meet and confer on a form of notice and claim form, rather than accept the proposed forms Plaintiffs submitted" and sets forth three objections to the proposed notice: (1) "the Notice fails to inform recipients that the Court has made no judgment on the merits until the final sentence at the top of page 2; (2) the notice should "include a neutral and non-technical reference to discovery obligations, to ensure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class action"; and (3) opt-ins should be notified that "they may be required to pay litigation costs." (*Id.* at 13-14.)

C.    **The Reply**

In reply, Plaintiffs argue that Defendant relies on the wrong legal standard and that they have satisfied the relevant standard, emphasizing that there is no evidentiary burden at this stage and that differences among the members of the collective are not disqualifying. (Doc. 27 at 1-6.)  Plaintiffs nevertheless emphasize that all members of the proposed collective "perform similar job functions." (*Id.* at 7.)  Plaintiffs also question whether any company has "a written policy that states they have a company policy to violate the law," implying that such a written policy is not a prerequisite for preliminary certification. (*Id.* at 5.)  Plaintiffs also argue that all of the members of the collective should have been classified as non-exempt and the fact that some were allegedly misclassified as exempt is

no barrier to preliminary certification, as whether they were exempt is "a matter for the second stage where Defendant may attempt decertification of the action." (*Id.* at 6.)

Next, Plaintiffs concede that the Court's jurisdiction does not extend to the claims of potential plaintiffs without ties to Arizona but argue that the Court has personal jurisdiction over "the claims of those employees employed by Defendant outside of Arizona, who have Arizona licenses and sell mortgages or loan money to Arizona individuals and to people buying homes in Arizona." (*Id.* at 8.) Finally, Plaintiffs argue that "the proposed Notice to potential plaintiffs satisfies the requirements of the law and comports with other notices approved by courts in this Circuit" and that "Defendant's objections are meant to cast a chilling effect on potential plaintiffs' exercising their statutory right of opting in and are themselves a threat of judicial neutrality." (*Id.* at 9.) Plaintiffs oppose Defendant's request to direct the parties to meet and confer because Defendant had the opportunity to raise objections in its response. (*Id.* at 10.)

III.    <u>Analysis</u>

    A.    **Preliminary Certification**

As noted, the preliminary certification analysis turns on whether the members of the proposed collective are "similarly situated," which in turns requires an evaluation of whether "they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114.

That standard is satisfied here, particularly in light of the "lenient" nature of the inquiry at the preliminary certification stage. *Id.* at 1109. The complaint alleges that the collective members "were misclassified as exempt" (Doc. 1 ¶ 8); that "Defendant permitted, and in fact required, Plaintiffs to work overtime as a condition of their employment" (*id.* ¶ 56); that "Plaintiffs were not permitted to report all of their overtime hours and [were] not paid for all hours worked over 40 hours" (*id.* ¶ 48); that "Defendant would deduct any overtime compensation paid to Plaintiffs from their earned

1    commissions" (*id.* ¶ 54); and that "[t]he experiences of Plaintiffs, with respect to their pay,

2    are typical of the experiences of the Collective Members" (*id.* ¶ 71). Those are similar

3    issues of law or fact. Thus, the legal standard is met, and any dissimilarities that might

4    exist among the members of the proposed collective do not preclude preliminary

5    certification.

6    Defendant asserts that "Plaintiffs cannot (and do not) allege the existence of an

7    official or written company policy which required them to work without compensation or

8    otherwise resulted in them being deprived of overtime" and "do not allege any facts

9    indicating that for the Proposed Collective, there was effectively a policy to disregard

10   Defendant's policy prohibiting off-the-clock work." (Doc. 26 at 6-7.) But it should go

11   without saying that there does not need to be a written policy requiring non-compliance

12   with the FLSA, as few employers would put an illegal policy into writing. *See, e.g.*,

13   *Campbell*, 903 F.3d at 1119 ("[T]he Officers' allegations of an unwritten, Department-

14   wide policy discouraging the reporting of overtime . . . provide a basis for collective

15   treatment, as they raise a similarity of fact or law whose disposition would advance the

16   litigation of the Officers' FLSA claims."). Plaintiffs have alleged sufficient facts to

17   establish that Defendant's common practice was to require its employees to work overtime,

18   disallow reporting of overtime hours, and deduct overtime compensation from earned

19   commissions. (Doc. 1 ¶¶ 48-56.) These allegations suffice.

20   Defendant's remaining grounds for opposing preliminary certification are

21   unavailing. For example, Defendant states:

22   > Plaintiffs . . . fail to even allege that Plaintiffs received overtime (*i.e.*,
     > compensation for hours worked in excess of forty in a single week). Rather,
23   > they allege that overtime was calculated at the wrong rate. Plaintiffs'
     > allegations fail to establish that Plaintiffs were individually subject to an any
24   > [sic] policy that violated the FLSA and resulted in them receiving overtime
     > at the incorrect rate.
25

26   (Doc. 26 at 9.) But in a lawsuit in which Plaintiffs assert that Defendant failed to meet its

27   obligation under the FLSA of paying statutorily mandated overtime wages, it is unclear

28   how a failure to allege that Plaintiffs "received overtime" could be a flaw in the complaint.

- 9 -

It is also unclear why Defendant believes that alleging "that overtime was calculated at the wrong rate" would be a flaw.  Defendant asserts that Plaintiffs are not alleged to have been "supervised by the same individuals" and that "[t]he Proposed Collective contains individuals who worked at branches across the country—and consequently, the many different supervisors they reported to applied Defendant's policies to them," and Defendant suggests this undermines the existence of "any company-wide (or even branch-wide) policy, practice, [or] system."  (*Id.* at 8.)  But the allegation that employees working under different supervisors were made to work overtime without reporting it tends, if anything, to support the theory that there was a company-wide policy.  Defendant also identifies a hypothetical way an employer could violate the FLSA and faults Plaintiffs for failing to allege such a violation here: "For example, they do not allege that EMC failed to compensate them for performing specific tasks."  (*Id.* at 9.)  But Plaintiffs are not required to allege that Defendant violated the FLSA in every possible way as a prerequisite to obtaining preliminary certification.

Defendant also cites *Vanorden v. ECP Optometry Servs. LLC*, 2024 WL 5200483 (D. Ariz. 2024), for the proposition that "[c]ourts look to the 'non-hearsay portions' of any supporting declaration to determine whether plaintiffs establish that they are similarly situated."  (Doc. 26 at 6.)  This may be true, as far as it goes—in *Vanorden*, this Court concluded that preliminary certification would be warranted even if the hearsay portions of the plaintiff's declarations were disregarded.  But Defendant's seeming purpose in citing *Vanorden* is to suggest that, in the absence of supporting declarations containing non-hearsay evidence, a request for preliminary certification should be denied.  If so, Defendant is mistaken for reasons that were explained at length in *Vanorden*:

> Defendants argue that Plaintiffs have failed to submit "objective evidence" to prove their similarity, asserting that Plaintiffs' declarations are "self-serving" and "rely on hearsay."  But objective evidence is not required here.  A preliminary certification motion—much like a Rule 12(b)(6) motion to dismiss—is typically filed at some point around the pleading stage and is focused on a review of the pleadings using a standard loosely akin to a plausibility standard, commensurate with the early stage of the proceedings.  Although the analysis may sometimes be supplemented by declarations or limited other evidence, such evidence is not necessary.  When such evidence is submitted, it is frequently in the form of declarations from the named

> Plaintiffs—indeed, in the Court's experience, this is almost always the case. Defendants' hearsay challenge is undeveloped, but it appears that Defendants object to the Plaintiffs' assertion that the requirement to do off-the-clock work was a regular topic of conversation among Plaintiffs and their coworkers. The caselaw is not clear on whether evidence must be admissible at the conditional certification stage of a FLSA action, and the briefing on this issue is cursory, at best. At any rate, preliminary certification would be warranted here even if the only specific assertion that Defendants challenge as hearsay . . . were disregarded. When the specific, non-conclusory allegations in the FAC and the non-hearsay portions of Plaintiffs' declarations are considered together, Plaintiffs have done enough to plausibly establish that the collective members were subjected to the same systemic practice and thus share a similar issue of law or fact material to the disposition of their FLSA claim.

2024 WL 5200483 at *8 (cleaned up). At any rate, to the extent the Court considers the evidence Plaintiffs have submitted, it is of the same sort submitted in *Vanorden* and most other FLSA collective actions, and it supports the allegations in the complaint.

Defendant also asserts that preliminary certification should be denied because "members of the Proposed Collective who were classified as exempt (such as Pearce and Bain) must advance a misclassification theory that requires analysis of their individual job functions, compensation structure, and even whether they acted in a supervisory or managerial role," whereas members who were classified as non-exempt will not need to litigate whether they were misclassified. (Doc. 26 at 2.) But the existence of a legal issue that is unique to certain collective members is not disqualifying so long as there is a different "issue of law or fact material to the disposition of their FLSA claims" that *is* common to all members. *Campbell*, 903 F.3d at 1117. Defendant relies heavily on out-of-circuit cases and on *Rivera v. Saul Chevrolet, Inc.*, 2017 WL 3267540 (N.D. Cal. 2017). (Doc. 26 at 10.) However, as the Court noted in a previous FLSA preliminary certification order, *Campbell* abrogated *Rivera* and other similar cases:

> *Rivera* predates *Campbell* and applied the "ad hoc" standard that the Ninth Circuit disapproved in *Campbell*. *Rivera*, for example, faulted the plaintiff for "fail[ing] to provide sufficient evidence that Plaintiff and members of the putative collective action . . . have similar job responsibilities and pay structures." *Rivera*, 2017 WL 3267540 at *8. But *Campbell* rejected that approach: "In applying the ad hoc test . . . the district court emphasized that Officers worked on different tasks, in different divisions, and under different supervisors. Those distinctions would not have mattered to the determination of liability if it were proven, as claimed, that the Department had an overall policy against submitting small overtime claims. A systemic policy is no less common across the collective if those subject to it are affected at

1
2
3

> different times, at different places, in different ways, or to different degrees. *Campbell*, 903 F.3d at 1116. Simply put, *Campbell* holds that the alleged existence of a systematic policy to which all employees were subjected eliminates the need to scrutinize individual plaintiffs in search of differences.

*Robinson v. Maricopa Cnty. Special Health Care Dist.*, 696 F. Supp. 3d 769, 782 (D. Ariz. 2023). Whether certain collective members were misclassified as exempt must be resolved at a later stage of this case, and if it is resolved in Defendant's favor, those members will be dismissed. But the existence of that potential "difference" between collective members is not "disqualifying"—rather, "the requisite kind of similarity" is the "basis for allowing partially distinct cases to proceed together." *Campbell*, 903 F.3d at 1117.

B.    **Scope Of Notice**

"The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Campbell*, 903 F.3d at 1101 (cleaned up). Even so, the grant of a motion for preliminary certification often leads, at least in the Court's experience, to further disputes over the wording of the notice and the need for discovery to identify potential collective members. In general, district courts possess wide discretion when resolving such disputes. *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 684 (9th Cir. 2025) ("As we have recognized, the proper means of managing a collective action—the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely a question of case management and thus a subject of substantial judicial discretion. That is particularly true of preliminary certification, to the extent it relates to the approval and dissemination of notice.") (cleaned up).

In *Harrington*, the Ninth Circuit identified another issue that may give rise to notice-related disputes—identifying the proper universe of individuals to whom the notice should be sent. There, the district court granted the plaintiffs' motion for preliminary certification in an FLSA action and then determined that nationwide notice should be sent to all of the defendant's potentially affected employees, even though some of those employees had entered into arbitration agreements and/or did not work in Arizona. *Id.* at 681-82. As for

the former group, the Ninth Circuit affirmed the district court's decision to authorize notice to "employees that allegedly entered into arbitration agreements with the defendant," noting that it would be "an abuse of discretion to authorize notice to employees if it is undisputed that their claims are subject to arbitration" but declining "to adopt any bright-line rule requiring district courts in all cases to make conclusive determinations regarding the arbitrability of prospective opt-in plaintiffs' claims prior to the dissemination of notice" because "[i]ssues regarding the applicability and enforceability of arbitration agreements are often fact intensive and individualized" and "[i]t may not be feasible or even possible to make those determinations in the absence of the parties allegedly bound by the agreements." *Id.* at 684. "Thus, where the existence and validity of an arbitration agreement remains in dispute, a district court is not required to rule on the arbitrability of absent employees' claims prior to authorizing notice. Instead, the district court may reserve that determination until after the prospective plaintiffs have, in fact, opted into the litigation." *Id.* at 683-84 (cleaned up). As to the latter group, the Ninth Circuit resolved a "split" that had emerged "among circuit and district courts" regarding whether, in FLSA collective actions, specific personal jurisdiction must be determined on a claim-by-claim basis and concluded that "where the basis for personal jurisdiction in the collective action is specific personal jurisdiction, the district court must assess whether each opt-in plaintiff's claim bears a sufficient connection to the defendant's activities in the forum state." *Id.* at 682, 685. "Because the district court authorized nationwide notice on the mistaken assumption that it would not need to assess specific personal jurisdiction on a claim-by-claim basis," the Ninth Circuit "remand[ed] for further proceedings consistent with this opinion." *Id.*

Relying on *Harrington*, Defendant argues that "[t]he claims of the out-of-state members of the Proposed Collective have no connection to Arizona (or [Defendant's] operations here)" and therefore "notice should be limited to potential class members who were employed in Arizona." (Doc. 26 at 13.) In reply, "Plaintiffs concede that the issue of this Court's jurisdiction does not extend to the claims of potential plaintiffs without ties

to Arizona under *Harrington*" but "disagree with Defendant's argument that this Court lacks the requisite personal jurisdiction over the claims of those employees employed by Defendant outside of Arizona, who have Arizona licenses and sell mortgages or loan money to Arizona individuals and to people buying homes in Arizona," arguing that the Ninth Circuit's "three-prong test for analyzing a claim of specific personal jurisdiction" would be satisfied as to that subset of non-Arizona collective members.  (Doc. 27 at 8-9.)

The Court rejects Defendant's proposal to limit the scope of the notice to Arizona-based collective members.  The premise underlying that proposal is that the Court would lack personal jurisdiction over any claim asserted by a collective member who did not physically work from Arizona.  But as Plaintiffs note in their reply, there is at least a non-frivolous argument that the Court would possess personal jurisdiction over the claims asserted by a subset of those non-Arizona collective members (*i.e.*, non-Arizona collective members whose work for Defendant might be considered "directed" toward Arizona because they were licensed in Arizona and/or sold mortgages or loaned money to Arizona customers). Of course, determining whether personal jurisdiction actually exists over those individuals' claims will require a fact-intensive and individualized analysis, but that was also the situation in *Harrington* regarding the collective members who had entered into arbitration agreements.  Nevertheless, the Ninth Circuit affirmed the district court's decision to authorize notice to those collective members despite the possibility their claims might be barred by the arbitration agreements, explaining that the arbitrability analysis could wait until after they opted in.  *Harrington*, 142 F.4th at 684 ("[W]here the existence and validity of an arbitration agreement remains in dispute, a district court is not required to rule on the arbitrability of absent employees' claims prior to authorizing notice.  Instead, the district court may reserve that determination until after the prospective plaintiffs have, in fact, opted into the litigation. . . .  The district court appropriately treated arbitrability as one factor in its determination of whether and how to facilitate notice.").  For similar reasons, the scope of the notice here must be expansive enough to include, at a minimum, both the collective members who worked from Arizona and the collective members who

1    worked outside Arizona but will be able to advance non-frivolous arguments in favor of

2    personal jurisdiction. *Cf. Campbell*, 903 F.3d at 1110 ("In some cases, it may be that a

3    district court abuses its discretion in refusing to allow notice to putative collective action

4    members . . . .").

5            The more complicated question is whether the notice should be limited to those two

6    groups or should instead be unqualified nationwide notice (*i.e.*, notice to all collective

7    members, even non-Arizona members who did not hold an Arizona license or otherwise

8    direct their work activities toward Arizona).[3]   The unqualified nationwide notice option

9    has two obvious virtues.  First, it will avoid underinclusiveness.  It is possible—however

10   unlikely—that certain non-Arizona opt-in plaintiffs who do not fit Plaintiffs' proposed

11   criteria (those who "have Arizona licenses and sell mortgages or loan money to Arizona

12   individuals and to people buying homes in Arizona") might nevertheless be able to advance

13   non-frivolous arguments that the Court has specific personal jurisdiction over their claims,

14   based on facts specific to their situations.  While it is admittedly difficult to imagine what

15   those hypothetical facts might be, unusual circumstances could exist.  Second, unqualified

16   nationwide notice would be easy to administer.  Indeed, if notice outside Arizona were

17   instead limited to the subset of collective members who held Arizona licenses or otherwise

18   directed their work toward Arizona, the parties would need to identify some process for

19   prospectively identifying which non-Arizona collective members fall within those

20   categories.  The Court cannot fathom how that identification process would work.

---

21
22   [3]    For what it's worth, Plaintiffs do not clearly indicate which of these options they
     prefer.  Plaintiffs' motion seems to request unqualified nationwide notice.  (Doc. 6-5 at 2
23   ["Defendant shall provide Plaintiffs' counsel within three (3) days of this order the names,
     all known addresses, all known email addresses (work and personal), employee
24   identification number, last four digits of social security numbers, dates of employment for
     all Collective Members, and phone numbers ('Class List').  Defendant shall provide such
25   information in a computer-readable format.  Plaintiffs' counsel shall mail a copy of the
     'Notice of Collective Action' and 'Consent Form', via regular U.S. Mail and via electronic
26   mail to all persons contained on the list within seven (7) days of receiving the list from
     Defendant."].)  Meanwhile, although Plaintiff concede in their reply that the Court would
27   lack personal jurisdiction over the claims asserted by some non-Arizona collective
     members (Doc. 27 at 8 ["Plaintiffs concede that the issue of this Court's jurisdiction does
28   not extend to the claims of potential plaintiffs without ties to Arizona under *Harrington*
     . . . ."]), Plaintiffs do not explain how (or if at all) this concession affects the scope of
     notice.

With that said, the unqualified nationwide notice option also has a potential drawback—namely, overinclusiveness. As noted, Plaintiffs seem to contend that only a subset of the non-Arizona collective members will be able to advance a legitimate argument in favor of personal jurisdiction—again, those non-Arizona collective members who were licensed in Arizona or otherwise directed their work activities toward Arizona. But under the unqualified nationwide notice option, notice would not be limited to that subset of non-Arizona collective members. As a result, many non-Arizona collective members who (at least according to Plaintiffs) lack any legitimate basis for seeking to invoke this Court's personal jurisdiction would end up receiving notices and, potentially, opting in. This outcome could create confusion. *Dempsey v. Smith's Food & Drug Ctrs., Inc.*, 2025 WL 326644, *3 (D. Nev. 2025) (noting that sending "a notice of the lawsuit . . . to [defendant's assistant store managers] across seven states, even though the Court may lack personal jurisdiction over them, [would] creat[e] confusion and wast[e] resources"). Additionally, *Harrington* holds that "it is an abuse of discretion to authorize notice to employees if it is undisputed that their claims are subject to arbitration." *Harrington*, 142 F.4th at 684. By the same logic, the Court is wary of authorizing notice to collective members as to whom there is no colorable argument in favor of personal jurisdiction.

After weighing these pros and cons, the Court concludes that unqualified nationwide notice is the least-bad option. There is no practical way to prospectively identify the subset of non-Arizona collective members who may still have a legitimate argument regarding personal jurisdiction in Arizona. Additionally, there is a straightforward solution if non-Arizona collective members end up opting in despite a lack of personal jurisdiction—the Court can simply sever their claims and transfer them to the jurisdiction(s) where Defendant would be subject to personal jurisdiction. *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12 (2022) ("If the court lacks personal jurisdiction over the defendant, the court may transfer the case in lieu of dismissal."). Indeed, the Court recently followed that approach in another FLSA case in light of *Harrington*. *Vanorden v. ECP Optometry Servs. LLC*, 2025 WL 2468643, *1 (D.

Ariz. 2025) ("Based on *Harrington*, both sides in this action now agree that the Court lacks personal jurisdiction with respect to the claims of the 496 members of the Non-Arizona Collective.  However, the parties disagree about how to proceed in light of this lack of personal jurisdiction—Defendants argue that the claims of the 496 members of the Non-Arizona Collective should be dismissed while Plaintiffs argue that those Plaintiffs' claims should be severed from the claims of the members of the Arizona Collective and then transferred to the United States District Court for the Eastern District of Missouri.  On August 26, 2025, after hearing oral argument from the parties, the Court agreed with Plaintiffs that, similar to the course of action followed in *Medina v. Happy's Pizza Franchise*, LLC, 2012 WL 1094353 (N.D. Ill. 2012), the most appropriate course of action here is to sever the claims of the 496 members of the Non-Arizona Collective, treat those claims as a separate FLSA collective action, and then transfer that newly formed FLSA collective action to the United States District Court for the Eastern District of Missouri.") (citations omitted).

C.    **The Notice**

Defendant raises three objections to the proposed notice: (1) "the Notice fails to inform recipients that the Court has made no judgment on the merits until the final sentence at the top of page 2"; (2) the notice should "include a neutral and non-technical reference to discovery obligations, to ensure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class action"; and (3) recipients should be notified "they may be required to pay litigation costs." (*Id.* at 13-14.)

Defendant cites *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989), in support of the first objection.  (Doc. 26 at 13-14.)  In *Hoffman-LaRoche*, the notice included a statement at "the end" indicating "that the notice had been authorized by the District Court, but that the court had taken no position on the merits of the case." *Id.* at 169.  The Supreme Court highlighted the "propriety" of court intervention in the notice process but "decline[d] to examine the terms of the notice" including "its concluding statement indicating court authorization," thus confirming "the existence of the trial court's discretion" without

reviewing "the details of its exercise." *Id.* at 170.  The decision emphasized the district court's "well settled" and "considerable" authority, *id.* at 172-73, and although it contained the caveat that district courts do not have "unbridled discretion" and "must be scrupulous to respect judicial neutrality," *id.* at 174, it took no issue with a statement "that the court had taken no position on the merits of the case" that was placed at "the end" of the notice. *Id.* at 169.  As such, *Hoffman-LaRoche* does not support (and indeed seemingly contradicts) Defendant's first objection.  Defendant cites no other authority in support of the notion that "the top of page 2" is an impermissible placement for a statement indicating that the Court has made no judgment on the merits.

As for Defendant's argument that the notice should include warnings about potential discovery obligations and litigation costs, the Court has rejected this argument in the past. *Flores v. Elite Staffing Servs. LLC*, 2025 WL 1000740, *8 (D. Ariz. 2025) ("The Boulders Defendants assert that the form of notice should include a warning to potential opt-in plaintiffs informing them that they may have to participate in discovery, depositions, and trial if they opt in and may be liable for defendants' attorneys' fees and costs if they opt in and do not prevail.  These proposed revisions are unavailing.") (cleaned up).  As for potential discovery obligations, "informing potential plaintiffs that if they join the collective action, they may be required to answer questions in writing or in deposition, or to give testimony at trial . . . is unnecessary and inappropriate." *Prentice v. Fund for Pub. Int. Rsch., Inc.*, 2007 WL 2729187, *5 (N.D. Cal. 2007) (cleaned up).  *See also Russell v. Swick Mining Servs. USA Inc.*, 2017 WL 1365081, *5 (D. Ariz. 2017) ("Plaintiffs strongly oppose such language, and the Court agrees that it may have a chilling effect on recipients who may be unfamiliar with litigation.  Any opt-in who remains reticent to actively engage in discovery will have abundant opportunity to withdraw from the action.  Accordingly, the Court will not require a description of potential discovery obligations in Plaintiffs' Notice.").  As for potential litigation costs, the FLSA's fee-shifting provision does not contemplate that a prevailing defendant may recover attorneys' fees from the losing plaintiff.  29 U.S.C. § 216 ("The court in such action shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Congress excluded FLSA plaintiffs from fee liability and "state[d] so specifically," authorizing fee liability only for defendants. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 778 n.7 (1989); *Peak v. Forever Living Prods. Int'l, Inc.*, 2011 WL 13174334, *8 (D. Ariz. 2011) ("FLSA also [has a] mandatory one-way fee-shifting provision[], requiring that a defendant pay a reasonable attorney's fee to a prevailing plaintiff, but not the other way around."). Because the FLSA "does not specifically provide attorney's fees to prevailing defendants," a plaintiff can be liable for a defendant's fees in an FLSA action only "as a fine for the wilful disobedience of a court order, or when a losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985) (cleaned up). As such, "it is uncommon for prevailing defendants to be awarded attorney fees." *Coughlin v. Shimizu Am. Corp.*, 991 F. Supp. 1226, 1231 (D. Or. 1998). A warning that opt-in plaintiffs could be liable for Defendants' attorneys' fees would thus "undermine the FLSA's goal of encouraging full enforcement of statutory rights, especially where potential opt-in plaintiffs are low-wage workers," and "the potential chilling effect of defendants' proposed warning outweighs the realistic likelihood that any future opt-ins would be required to pay a portion of defendants' litigation costs." *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, *14 (C.D. Cal. 2012).

Finally, Defendant requests that "[i]f the Court grants Plaintiffs' motion for conditional certification, it should direct the parties to meet and confer on a form of notice and claim form, rather than accept the proposed forms Plaintiffs submitted," relying on *Khadera v. ABM Indus. Inc.*, 701 F. Supp. 2d 1190 (W.D. Wash. 2010). (Doc. 26 at 13.) This is another argument the Court has previously rejected:

> Defendants rely on [*Khadera*] for the proposition that the Court should order the parties to meet and confer to develop the notice and consent forms. But in *Khadera*, the plaintiffs apparently did not draft proposed notice and consent forms and submit them with their preliminary certification motion, as Plaintiffs did here. As a result, the court in *Khadera* ordered the plaintiffs to file a proposed notice, set a deadline for the defendants to oppose it, and encouraged the parties to meet and confer to determine whether they could provide a stipulated form. Here, Plaintiffs already filed their proposed notice

and consent forms and Defendants had a full and fair opportunity to object. There is no justification for further delay. Plaintiffs' proposed notice and consent forms may be sent.

*Vanorden*, 2024 WL 5200483 at *11.

Having overruled all of Defendant's objections and requests regarding the proposed notice, the Court approves the notice as submitted by Plaintiffs. Furthermore, as Defendant did not object to any aspect of Plaintiffs' proposed notification plan, that plan is accepted in full, with one exception. Plaintiffs request that "the Court order Defendant to produce *within three days of its order*, a list in electronic and importable format, of all employees including: (1) their full name, (2) all known mailing addresses, (3) all known email addresses (work and personal), (4) employee identification number, if any, (5) dates of employment, and (6) phone numbers." (Doc. 6 at 13-14, emphasis added.) Although the Court recognizes that the ubiquity of electronic filing may make gathering such information a less time-consuming task than in bygone days when employee records were maintained in paper form only, three days still strikes the Court as an overly compressed amount of time. Thus, Defendant will be ordered to produce the requested list as soon as possible, and at any rate no later than seven days from the date of this order.

### D.    **Tolling Of The Statute Of Limitations**

Plaintiffs filed the preliminary certification motion on August 26, 2025. (Doc. 6.) On September 9, 2025, the parties filed a joint motion requesting that the deadline for Defendant to respond be extended for 30 days and agreeing to toll the statute of limitations for 30 days for any opt-in plaintiff who opts into the collective action after notice is issued. (Doc. 10.) The Court granted the joint motion. (Doc. 11.) Then, on October 8, 2025, the parties again filed a joint motion to extend Defendant's response deadline and toll the statute of limitations, this time for 14 days. (Doc. 17.) The Court granted that joint motion as well. (Doc. 18.) Finally, on October 27, 2025, the parties filed a third joint motion to extend Defendant's response deadline and toll the statute of limitations, this time for seven days. (Doc. 23.) The Court granted that joint motion, too. (Doc. 25.) The result of these extensions was that the preliminary certification motion, which was filed in August, was

1    not fully briefed until November 7, 2025.  (Doc. 27.)

2    The parties' joint motions demonstrate the parties' commitment to ensuring that any

3    delay in briefing the motion should result in tolling of the statute of limitations.  So too,

4    the Court concludes that its delay in resolving the motion should likewise result in tolling

5    of the statute of limitations.[4]

6    The statute of limitations for FLSA actions provides that "every such action shall

7    be forever barred unless commenced within two years after the cause of action accrued,

8    except that a cause of action arising out of a willful violation may be commenced within

9    three years after the cause of action accrued."  29 U.S.C. § 255(a).  In FLSA collective

10    actions, the action is "considered to be commenced" as to opt-in plaintiffs on the date when

11    their written consent to opt in is filed.  29 U.S.C. § 256(b).

12    Nevertheless, "the FLSA does not bar the district court-imposed suspension of the

13    statute of limitations" and "such tolling is supported by substantial policy reasons."

14    *Partlow v. Jewish Orphans' Home of S. California, Inc.*, 645 F.2d 757, 761 (9th Cir. 1981),

15    *abrogated on other grounds by Hoffmann-La Roche*, 493 U.S. 165.  Tolling can be

16    appropriate even if the defendants have "done nothing wrong."  *Id.* at 760.  *See also Ray v.*

17    *California Dep't of Soc. Servs.*, 2019 WL 6888050, *8 (C.D. Cal. 2019) ("[T]he Court does

18    not need to find any fault on the part of the [defendant] in order to toll the statute of

19    limitations.").  "Courts have equitably tolled the statute of limitations in [an] FLSA action

20    when doing so is in the interest of justice."  *Castle v. Wells Fargo Fin., Inc.*, 2007 WL

21    1105118, *1 (N.D. Cal. 2007).

22    Delay in the resolution of a motion for preliminary certification can justify equitable

23    tolling.  *Harrington v. Cracker Barrel Old Country Store Inc.*, 713 F. Supp. 3d 568, 579

24    (D. Ariz. 2024) ("[D]elays beyond a plaintiff's control include the time a court requires to

25    rule on a motion to certify a collective action under the FLSA."); *Begley v. JK Enter. Inc.*,

26    2022 WL 1609234, *2 (D. Or. 2022) (equitable tolling appropriate where "the court's

27

28    ---

[4]    The Court considers this issue *sua sponte* because Plaintiffs had no reason to anticipate, at the time of filing the motion or the reply brief, that the Court would delay in resolving the motion.

significant caseload delayed resolution" of preliminary certification motion by almost five months); *Winningham v. Rafeal's Gourmet Diner, LLC*, 2022 WL 18359485, *2 (D. Or. 2022) ("[I]t is in the interest of justice to equitably toll the statute of limitations because the Court's docket management is out of Plaintiffs' control. The time required for a court to rule on a motion for certification of a collective action in a FLSA case may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine. Additionally, Defendants in this case would not be prejudiced by this tolling because Defendants knew the scope of potential liability at the time that Plaintiffs filed the Complaint. Thus, it is in the interests of justice to equitably toll the statute of limitations to eliminate any prejudice suffered by potential collective action members as a result of the delay in resolving the conditional certification motion.") (cleaned up); *Small v. Univ. Med. Ctr. of S. Nevada*, 2013 WL 3043454, *4 (D. Nev. 2013) ("The potential opt-in plaintiffs could be unfairly prejudiced by the court's [three month] delay in resolving the Motion").

The FLSA provides workers with a "right" to join a collective action, which allows those workers to "capitaliz[e] on efficiencies of scale." *Campbell*, 903 F.3d at 1100, 1105. Without "the opportunity to proceed collectively," *id.* at 1115, workers might not have the means or wherewithal to proceed at all. The Ninth Circuit's "two-step" approach "has the advantage of ensuring early notice of plausible collective actions." *Id.* at 1110. "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Because potential opt-in plaintiffs cannot join a collective action unless they have notice that it exists, a delay in providing early notice can result in workers having their claims "forever barred" by the statute of limitations.

On the other hand, "Congress knew when it enacted 29 U.S.C. § 256 that time would

lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for [automatic] tolling of the limitations period.  Congress could have avoided the foreseeable delay of good faith motions and judicial decision-making by patterning the statute of limitations for the FLSA after that of Rule 23 for class actions; however, they did not do so.  The fact that a statute creates procedural requirements that limit some potential claimants' participation in a suit, standing alone, is insufficient to toll the statute of limitations."  *MacGregor v. Farmers Ins. Exch.*, 2011 WL 2731227, *1 (D.S.C. 2011) (cleaned up).  Accordingly, the inherent delay of ordinary motion practice and a reasonable amount of time for judicial resolution of a preliminary certification motion does not warrant equitable tolling.  But when the delay becomes longer, beyond what Congress contemplated, tolling may be warranted.

The Court's resolution of the motion following full briefing has taken about three months, which is in the range that courts have determined to justify equitable tolling.  *Small*, 2013 WL 3043454 at *4.    Thus, the Court will equitably toll the statute of limitations for opt-in plaintiffs who opt in after notice issues by 60 days to account for the delay in judicial resolution of the motion, in addition to the 51 days of tolling already granted to account for the briefing delays, for a total of 111 days.

Accordingly,

**IT IS ORDERED** that:

1.    Plaintiffs' preliminary certification motion (Doc. 6) is **granted**.    The collective, as defined in this order, is preliminarily certified.

2.    Defendant shall, within 7 days of the date of this order, provide Plaintiffs with a list in electronic and importable format, of all current and former employees in the collective including: (1) their full name, (2) all known mailing addresses, (3) all known email addresses (work and personal), (4) employee identification number, if any, (5) dates of employment, and (6) all known phone numbers.

3.    The collective members may execute their consent forms traditionally or

electronically via DocuSign and/or Clio.

4.      The opt-in period shall be 90 days from the date on which Plaintiffs are provided with collective members' contact information.  Plaintiffs may send a reminder notice to any collective member who has not returned an executed Consent to Join form to Plaintiffs' counsel after 45 days.

5.      Notice is authorized in the form of: (a) mailing of the proposed Notice, by Plaintiffs' Counsel, to all known addresses of all potential opt-in Plaintiffs; (b) emailing of the proposed Notice, by Plaintiffs' Counsel, to all known email addresses of all potential opt-in Plaintiffs, (c) posting of the proposed Notice, by Defendant, in a conspicuous location in all its facilities until the opt-in period closes; and (d) inclusion of notice with paychecks to Defendant's current workers.

6.      For all plaintiffs who opt in after notice is sent, the statute of limitations is tolled by an additional 60 days, which, when added to the 51 days of tolling already granted for briefing delays, amounts to 111 days of tolling.

Dated this 11th day of February, 2026.

_____
Dominic W. Lanza
United States District Judge